IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

_____

| | |
|---|---|
| MICHAEL RICHARD MORRISSEY, PRO SE,§ | |
| TDCJ-CID No. 914587, | § |
| Previous TDCJ-CID No. 518665, | § |
| Kansas ID No. 23464, | § |
| Kansas ID No. 23812, | § |
| Kansas ID No. 20719, | § |
| Kansas ID No. 3746-C, | § |
| Nebraska ID No. 32934, | § |
| Federal ID No. 87933-132, | § |
| | § |
| Plaintiff, | § |
| | § |
| v. | §    2:13-CV-0074 |
| | § |
| TIMOTHY KING, Sgt. of Correctional | § |
| Officers; GREGORY DAVID, Assistant | § |
| Warden; and ROBERT H. KANE, JR., | § |
| Acting Regional Director, | § |
| | § |
| Defendants. | § |

**REPORT AND RECOMMENDATION TO
DENY DEFENDANT KING'S MOTION FOR SUMMARY JUDGMENT**

On this day came for consideration defendant KING's October 23, 2013 Motion for

Summary Judgment with supporting memorandum and appendix of exhibits, along with Exhibits

D-1, D-2, D-3 and D-4, which have been sealed to protect the confidentiality of plaintiff's

medical records.  After receiving an extension, plaintiff filed his "Opposition/Response to

Defendant's Motion for Summary Judgment with Law Brief[ed] [sic] and Preliminary

Documentary Evidence Included Therein" on December 20, 2013.  Defendant filed his reply on

January 14, 2014, with supporting brief and appendix.

Plaintiff's claims against defendants DAVID and KANE were dismissed without

prejudice for failure to state a claim on which relief can be granted and with prejudice as frivolous by Order of Partial Dismissal issued May 17, 2013.

Plaintiff claims defendant KING was deliberately indifferent to his serious medical need when he denied plaintiff's requests to be sent to the infirmary on Saturday, September 22, 2012 and on Sunday, September 23, 2012. Plaintiff also asserts a state tort claim of negligence. Plaintiff requests declaratory relief, and an award of compensatory and punitive damages, as well as an award of attorneys fees, in unspecified amounts.

## UNDISPUTED FACTS

Plaintiff was a prisoner in the custody of the Texas Department of Criminal Justice, Correctional Institutions Division (TDCJ-CID), during the time relevant to this cause. Defendant KING was employed by the Texas Department of Criminal Justice, Correctional Institutions Division (TDCJ-CID), a state agency, during the time relevant to this cause, and was acting under color of state law.

On Saturday, September 22, 2012, at about 10:30 a.m., plaintiff approached defendant KING, reported his right leg and foot were swollen, and requested to go to the infirmary. Defendant KING placed a phone call to a nurse, LVN O'Keefe, in the infirmary and then refused plaintiff's request to go to the infirmary.

Plaintiff made another request of defendant KING on Sunday, September 23, 2012, and was against denied. At some point plaintiff submitted a sick call request which was received and processed on Tuesday, September 25, 2012. Plaintiff did not present as a walk-in to the infirmary on either Saturday September 22, 2012 or on Sunday September 23, 2012.

Defendant KING was on duty and worked from 5:00 a.m. to 5:00 p.m. from Saturday

September 22, 2012 through Tuesday September 25, 2012.

Plaintiff was sent from the chow hall to the infirmary on Tuesday September 25, 2012 after an officer noticed plaintiff was limping. Plaintiff was examined by medical personnel. His temperature was 97.3 degrees. He was found to have +1 redness to his right ankle, no deformities, some swelling, tenderness, and the ankle was not draining. Dr. Patel diagnosed "mild cellulitis rt ankle" and started plaintiff on antibiotics and pain medication.

On September 27, 2012 Dr. Leeah found plaintiff had improved, had no drainage and had a full range of motion. On September 29, 2012 Nurse O'Keefe found plaintiff had developed some drainage and applied a dressing.

## FACTUAL ALLEGATIONS

By his sworn complaint, plaintiff alleges defendant KING "denied plaintiff medical attention for his serious medical health needs" when he "prevented plaintiff from going to infirmary when he presented himself with a badly swollen lower right leg and foot and in extreme pain." Plaintiff alleges he began to feel pain on September 21, 2012 and, with the help of an Officer Cardenas, hobbled to defendant KING's desk to report his need for medical care. Plaintiff alleges KING responded by telling plaintiff to go back to his pod, that there was nothing wrong with his foot. Plaintiff says when he objected, KING told him he had called the infirmary and they didn't want to see him, that he was faking it[1]. Plaintiff says he hobbled back to his cell and endured a night of pain, eating only some commissary supplies he had in his locker. The next day, an Officer Stewart noted plaintiff had difficulty coming to his cell door when Stewart performed a "bed-book" check. Plaintiff explained his foot and leg were painful and that KING

---

[1] Plaintiff's Original Complaint at page 2 of the typewritten attachment.

had not allowed him to go to medical.  Plaintiff says Officer Stewart talked to KING and returned to plaintiff, saying KING "refused to allow him to get plaintiff to the infirmary . . .."  Plaintiff says KING wouldn't let Stewart make a call to the infirmary, saying, instead, "I've taken care of it."

Plaintiff says he was able to go to the chow hall to eat on September 25, 2012 and, after leaving the chow hall, he fell or sat on the wall of a flower bed where an officer asked him what was wrong.  Plaintiff says he showed the officer his "now badly discolored/swollen" and painful foot and lower leg and the officer got someone to help plaintiff get to the infirmary.  Plaintiff was examined by a nurse, scheduled to see a doctor that day, examined by a doctor and started on treatment for cellulitis, which treatment consisted of antibiotic and pain medication.  Plaintiff's leg and foot were examined each day to assess plaintiff's condition.  Plaintiff says he saw Nurse O'Keefe, who had taken the phone call from KING.  Plaintiff states that O'Keefe said KING had told him plaintiff was faking it and there was nothing wrong with him[2].

Plaintiff also claims defendant KING's acts and omissions constitute negligence under state law.

### DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

By his motion, defendant has submitted the following summary judgment evidence:

| Exhibit D-1 | App. pp. 150 | Portions of TDCJ Health Service Archive Medical Records of Plaintiff with supporting affidavit |
|---|---|---|
| Exhibit D-2 | App. pp. 51-104 | Weekend Nurse Sick Call Requests from TDCJ Health Service Archive Medical Records of Plaintiff with supporting affidavit |

---

[2]Id. at pages 3-4.

| | | |
|---|---|---|
| Exhibit D-3 | App. pp 105-144 | Weekend Clinic Visits from TDCJ Health Service Archive Medical Records of Plaintiff with supporting affidavit |
| Exhibit D-4 | App. pp 145-166 | Portions of TDCJ Grievance Records of Plaintiff with supporting affidavit |
| Exhibit D-5 | App. pp 167-173 | TDCJ Correctional Managed Care Policy #-37.1 |
| Exhibit D-6 | App. pp 174-176 | Affidavit of Defendant Timothy King |
| Exhibit D-7 | App. pp 177-181 | Published article, "Cellulitis Information for Adults" with supporting medical references |
| Exhibit D-8 | App. pp 182-196 | Affidavit of Warden Gregory S. David with attachments |

Defendant argues that, in his Response to Defendant's Answer [D.E. 21] at page 5, plaintiff has stipulated he is only suing defendant in his individual capacity.  Defendant argues he is entitled to qualified immunity from plaintiff's deliberate indifference claim against him in his individual capacity and that the Court should decline to exercise pendent jurisdiction over plaintiff's state law negligence claim.

Plaintiff responds he has not received all the discovery he needs, defendant is not entitled to qualified immunity, and there are outstanding fact issues which prevent an award of summary judgment.

As evidence, plaintiff has attached his own eleven-page unsworn declaration, a one-page unsworn declaration by an inmate Kenneth Penny, and a two-page unsworn declaration by an inmate Jerry Woods, Jr.  Plaintiff has also submitted copies of various medical records and sick call requests.

By his January 14, 2014 Reply, defendant contends plaintiff's self-serving statements in his unsworn declaration do not create a genuine issue of material fact, that plaintiff has not

established the objective or the subjective elements of deliberate indifference, plaintiff has not

shown the "substantial harm" necessary to sustain a claim of delay of medical care, the evidence

shows plaintiff was the superceding cause of any injury he suffered, and plaintiff has not shown

defendant KING's acts were objectively unreasonable.

As evidence, defendant presents Exhibit D-8, at App. pp 182-196, the Affidavit of

Warden Gregory S. David, with attachments.

### THE STANDARD OF SUMMARY JUDGMENT REVIEW

Summary judgment may be granted where the pleadings, depositions, answers to

interrogatories, and admissions on file, together with the affidavits, if any, show that there is no

genuine issue as to any material fact and that the moving party is entitled to judgment as a matter

of law.  Federal Rule of Civil Procedure 56(c).  Consequently, after adequate time for discovery

and upon motion, summary judgment should be entered against a party who fails to make a

showing sufficient to establish the existence of an element essential to that party's case and on

which that party bears the burden of proof.  *Celotex v. Catrett*, 477 U.S. 317, 322-23, 106 S.Ct.

2548, 2552, 91 L.Ed.2d 265 (1986).

Only disputes of facts that could affect the outcome of the suit at trial will properly

preclude the entry of summary judgment.  *Anderson v. Liberty Lobby*, 477 U.S. 242, 248, 106

S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).  A complete failure of proof concerning an essential

element of the nonmoving party's case is fatal and entitles the moving party to judgment as a

matter of law.  *Celotex v. Catrett*, 477 U.S. at 322-23, 106 S.Ct. at 2552.  A motion for judgment

as a matter of law is properly granted when the facts and inferences point so strongly in favor of

the movant that a rational jury could not arrive at a contrary verdict.  If there is substantial

evidence, that is, evidence of such quality and weight that reasonable and fair-minded jurors

might reach a different conclusion, then the motion for judgment as a matter of law should be

denied. *Waymire v. Harris County, Texas*, 86 F.3d 424, 427 (5th Cir. 1996).

## THE STANDARD OF SUMMARY JUDGMENT REVIEW
## UPON A PLEA OF QUALIFIED IMMUNITY

Since qualified immunity depends on whether the defendant violated a clearly established

constitutional right, a preliminary inquiry must be made whether the plaintiff has asserted a

violation of any constitutional right at all. *Siegert v. Gilley*, 500 U.S. 226, 231, 111 S.Ct. 1789,

1793, 114 L.Ed.2d 277 (1991).  Analysis at this stage is performed under the "currently

applicable constitutional standards." *Rankin v. Klevenhagen*, 5 F.3d 103, 106 (5th Cir. 1993).

The second prong of the qualified immunity test is whether the constitutional right alleged to

have been violated was clearly established at the time of the incident; and, if so, whether the

conduct of the defendant was objectively unreasonable in  light of contemporaneous clearly-

established law. *Hare v. City of Corinth*, 135 F.3d 320, 328 (1998).  Although analysis under the

first prong requires the court to consider currently applicable constitutional standards, analysis

under the second prong requires a court to measure the objective reasonableness of an official's

conduct with reference to the law as it existed at the time of the conduct in question. *Id*. (citing

*Rankin v. Klevenhagen*, 5 F.3d 103, 108 (5th Cir. 1993).

In deciding which of the two prongs to address first, the court may utilize its sound

discretion in light of the circumstances in the particular case at hand. *Pearson v. Callahan*, 555

U.S. 223, 129 S.Ct. 808, 172 L.Ed.2d 565 (2009).

Although it may be "difficult to imagine factual circumstances in which a trier of fact

could find deliberate indifference as defined by *Farmer* and nevertheless conclude that a reasonable person in defendant's position was not chargeable with knowledge that his or her actions violated the plaintiff's clearly established constitutional rights," in analyzing a claim of qualified immunity, the test is objective reasonableness, not subjective deliberate indifference. *Hare v. City of Corinth*, 135 F.3d 320, 328 (5th Cir. 1998)(quoting *Briecke v. Coughlin*, No. 92-CV-1211, 1994 WL 705328 at 6 (N.D.N.Y.Dec. 16, 1994).  Consequently, at the qualified immunity stage, the deliberate indifference standard only allows an examination of whether, under the standard not to be deliberately indifferent, the acts or omissions of the defendant were objectively unreasonable as a matter of law.  *Hare v. City of Corinth*, 135 F.3d 320, 328 (5th Cir. 1998).

## PLAINTIFF'S DISCOVERY COMPLAINTS

Initially, the Court notes plaintiff was granted additional discovery to that set forth in the Scheduling Order.  All of plaintiff's discovery requests were considered and were either granted or denied as appropriate and for the reasons set forth in the Court's Orders.

Plaintiff complains that some of defendant's exhibits to the summary judgment motion have been sealed.  Plaintiff clearly does not understand that the "seal" applied to these exhibits prevents them from being accessible to members of the public.  Defendant has provided plaintiff with copies of his medical record and his grievances in discovery.  Further, plaintiff received a copy of defendant's motion for summary judgment, along with all the attachments, both sealed and unsealed.  If this was not done as represented by defendant, plaintiff did not inform the Court.  The mere fact that some of defendant's summary judgment exhibits are sealed, that is, are shielded from public disclosure in order to preserve plaintiff's privacy and to comply with the

applicable law, does not mean plaintiff has been disadvantaged in his ability to respond to the summary judgment motion.

Plaintiff also complains he has not been appointed counsel to enable him to take depositions and the Court has not granted his motion for depositions. The Court considered plaintiff's September 9, 2013 request for appointment of counsel and denied it by order issued September 10, 2013. This denial was affirmed upon appeal under Rule 72, Fed.R.Civ.Pro., to the United States District Judge, by order issued September 30, 2013. Plaintiff's October 29, 2013 motion for appointment of counsel was also denied by order issued October 31, 2013. No appeal was made to the United States District Judge. Plaintiff's request for depositions was denied because it was conditioned upon appointment of counsel and provision of a method to record and transcribe the depositions all at no cost to the plaintiff. Plaintiff has never addressed how he would pay for any depositions, recordings, and transcripts.

## DECLARATORY RELIEF

Declaratory Judgment is authorized by the Federal Declaratory Judgment Act which states, in relevant part, "in a case of actual controversy within its jurisdiction . . . any court of the United States . . . may declare the rights and other legal relations of any interested party seeking such declaration . . . ." 28 U.S.C. § 2201(a). Further, "the existence of another adequate remedy does not preclude a judgment for declaratory relief in cases where it is appropriate." Fed.R. Civ. Pro. 57.

A proper purpose of section 2201(a) is to allow potential defendants to resolve a dispute without waiting to be sued or until the statute of limitations expires. *Texas Employers' Ins. Assoc. v. Jackson,* 862 F.2d 491, 505 (5th Cir.1988). It is, by its nature, a defensive action,

"allowing prospective defendants to sue to establish their nonliability." *Beacon Theatres, Inc. v. Westover*, 359 U.S. 500, 5904, 79 S.Ct. 948, 953, 3 L.Ed.2d 988 (1959). Plaintiff is not seeking to avoid damages that might accrue due to a delayed assertion of a claim by others; nor is he asking to be relieved of the threat of suit by asserting a valid defense. Instead, plaintiff, in an offensive stance, is asking the Court to declare the defendants are liable for alleged past wrongful conduct. Plaintiff has not shown how the Declaratory Judgment Act properly applies and, with respect to this particular form of relief, has failed to state a claim on which relief can be granted.

## ATTORNEY'S FEES

Plaintiff requests an award of attorney's fees; however, plaintiff is proceeding *in pro se.* It is long-established in the Fifth Circuit that attorney's fees are not available to a non-attorney, pro se litigant. *See McLean v. Int'l Harvester Co.*, 902 F.2d 372, 373 (5th Cir. 1990). Further, plaintiff cannot recover attorney's fees under Texas' general attorneys' fee statute. *De Mino v. Achenbaum*, 136 Fed.Appx. 695, 696 (5th Cir. 2005). Even is plaintiff were a licensed attorney representing himself, he would not be entitled to attorney's fees. *See Beasley v. Peters*, 870 S.W.2d 191, 196 (Tex. App. – Amarillo 1994, no writ).

Plaintiff's request for attorney's fees is without an arguable basis in law and must be dismissed as frivolous. *Neitzke v. Williams*, 490 U.S. 319, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989)[3].

---

[3] A plaintiff who is represented by counsel and who prevails in a 42 U.S.C. § 1983 lawsuit may be entitled to an award of attorneys' fees pursuant to Title 42, United States Code, section 1997e(d) to the extent that the fee was directly and reasonably incurred in proving an actual violation of the plaintiff's rights protected by a statute pursuant to which a fee may be awarded under 42 U.S.C. § 1988 and the amount is proportionately related to the court ordered relief for the violation or was directly and reasonably incurred in enforcing the relief ordered for the violation. 42 U.S.C. § 1997e(d)(1).

## DEFENDANT'S CAPACITY

Defendant argues that plaintiff, in plaintiff's response to Defendant's Answer [D.E. 21] at page 5, has stated he is only suing defendant in his individual capacity. Actually, at page 2, of plaintiff's response to defendant's answer, plaintiff states defendant KING is not sued in his official capacity for damages; however, plaintiff notes he can be sued for injunctive relief. Plaintiff did not request injunctive relief; only declaratory and monetary relief were requested. As explained above, declaratory relief is not appropriate.

A suit against an official in his or her official capacity is actually a suit against the state. *Hafer v. Melo*, 502 U.S. 21, 112 S.Ct. 358, 361-62, 116 L.Ed.2d 301 (1991); *Sanders v. English*, 950 F.2d 1152, 1158 (5th Cir. 1992). The Eleventh Amendment bars suit against a state or a state official unless the State has waived its immunity[4]. *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 65-66, 109 S.Ct. 2304, 2309, 105 L.Ed.2d 45 (1989). Consequently, to the extent plaintiff is attempting to assert a claim against defendant KING in his official capacity for monetary relief, it is barred by the Eleventh Amendment and, thus, lacks an arguable basis in law and is frivolous. *Neitzke v. Williams*, 490 U.S. 319, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989).

There remains only plaintiff's claim for monetary relief against defendant in his individual capacity.

---

[4]An exception to this general principle was created in *Ex parte Young*, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908), in which the Supreme Court held that a suit for prospective injunctive relief, challenging the constitutionality of a state official's action in enforcing state law, is not one against the State. *Id.*, at 159-160, 28 S.Ct., at 453-54. *See, also, Edelman v. Jordan*, 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974)(the Eleventh Amendment grants the States an immunity from retroactive monetary relief, but state officers are not immune from prospective injunctive relief). However, as defendants point out, the relief requested in this cause is purely monetary and, thus, the *Young* exception does not apply.

## ANALYSIS OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

The first step in the qualified immunity analysis is to determine whether plaintiff has alleged a constitutional violation, *i.e.*, whether he has shown defendant KING was deliberately indifferent to his serious medical needs.

By his unsworn statement attached to his summary judgment response, plaintiff alleges that, on September 22, 2012, he was assisted by an officer Cardenas in walking from his cell to defendant KING's desk so he could request medical care. Plaintiff says he has a long history of problems in both feet and with his circulation in both legs. He says one foot was swollen, but when he got to KING's desk, KING made rude remarks and made plaintiff show KING his foot. When plaintiff complained he was in pain, KING called a nurse at the infirmary and told plaintiff they didn't want to see him, that he was faking it [Plaintiff's unsworn statement attached to his December 20, 3013 summary judgment response at page 2]. Defendant KING, however, states in his Affidavit [Exhibit D6 to his October 23, 2013 Motion for Summary Judgment] that it was Nurse O'Keefe who instructed KING to tell plaintiff to submit a sick call request. In his statement about the incident submitted November 28, 2012, KING reports he informed O'Keefe that plaintiff had stated he had put in a sick call request and O'Keefe had responded that plaintiff would be laid-in on Monday to see the doctor. KING says he relayed that information to plaintiff and plaintiff said okay and returned to his housing [Plaintiff's Morrissey 017].

Plaintiff says the next day an Officer STEWART told KING plaintiff was in pain and having trouble walking, but KING would not let STEWART call the infirmary and said, instead, "I've taken care of him already." Plaintiff says STEWART told him to put in a sick call request,

which he did, but that it took three days for the request to get processed[5].

Plaintiff also presents the unsworn statements of two other inmates saying they tried to help him go to chow on September 23rd and September 24th, but defendant KING refused both times to allow plaintiff off the pod because he was not wearing his shoes.

There is a definite dispute between plaintiff MORRISSEY and defendant KING as to what transpired on September 22, 2012.  The issue is whether that dispute is material.  Although it is a close call, the undersigned believes, based upon all of the summary judgment evidence before the Court, as well as on the absence of evidence on certain critical points, that a material factual dispute exists.

Society does not expect that prisoners will have unqualified access to health care, and deliberate indifference to medical needs amounts to an Eighth Amendment violation only if those needs are "serious."  *Hudson v. McMillian*, 503 U.S. 1, 9, 112 S.Ct. 995, 1000, 117 L.Ed.2d 156 (1992).  Deliberate indifference to a prisoner's serious medical needs constitutes an Eighth Amendment violation and states a cause of action under Title 42, United States Codes section 1983.  *Estelle v. Gamble*, 429 U.S. 97, 105-07, 97 S.Ct. 285, 291-93, 50 L.Ed.2d 251 (1976).  Such indifference may  be "manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed." *Estelle v. Gamble*, 429 U.S. 97, 104, 97 S.Ct. 285, 291, 50 L.Ed.2d 251 (1976).

---

[5]Plaintiff has stated he knew he could submit a sick call request before he first went to KING, but he did not feel he should have to wait for regular processing before his medical need was addressed.  Therefore, the issue of whether anyone told plaintiff to submit a sick call request or whether plaintiff had already submitted one is not material to the resolution of the issues of deliberate indifference and qualified immunity.

Deliberate indifference is defined as a failure to act where prison officials have knowledge of a substantial risk of serious harm to inmate health or safety. *Farmer v. Brennan*, 511 U.S. 825, 114 S.Ct. 1970, 1981, 128 L.Ed.2d 811 (1994). "Deliberate indifference is an extremely high standard to meet." *Domino v. Texas Dep't of Criminal Justice*, 239 F.3d 752, 756 (5th Cir. 2001). A prison official's failure to alleviate a significant risk that the official should have perceived, but did not, is insufficient to show deliberate indifference. *Id*. at 756 (citing *Farmer*, 511 U.S. at 838, 114 S.Ct. 1970).

Plaintiff presents medical records showing he suffers from vascular problems, particularly in his legs and feet[6].

Defendant KING states:

"[n]othing about my conversation with [plaintiff] or Nurse O'Keefe led me to believe that Plaintiff required immediate medical treatment. Mr. Morrissey appeared in no severe distress; he certainly did not appear to need urgent or emergency medical care to me. From my experience working for TDCJ and my observations on Saturday September 22, 2012, Nurse O'Keefe's instruction to put in a sick call request appeared correct to me. Nurse O'Keefe's instruction also conformed with my understanding of TDCJ Correctional Managed Health Care Policy E-37.1, which states:

Offenders with complaints of recent seizure, altered mental status, suicidal ideation, chest pain, shortness of breath, difficulty breathing, abdominal pain, or other possible emergent or urgent conditions, will be afforded immediate access to health services for

---

[6]Plaintiff was diagnosed with vascular insufficiency and intermittent claudication on January 16, 2002, [Plaintiff's attachments to his December 20, 2013 response to defendant's motion for summary judgment at Morrissey 1695 (hereinafter Plaintiff's Morrissey 1695)], and received an aortal femoral popliteal bypass for vascular insufficiency of his right leg by a Dr. Jarrous and was discharged on February 22, 2005 [Plaintiff's Morrissey 2002]. In July of 2007, plaintiff was examined by Dr. Jarrous who recommended a CT angiogram of the lower extremity in order to plan left femoral to popliteal bypass versus angioplasty, but plaintiff declined [Plaintiff's Morrissey 423]. An echocardiography report dated April 28, 2008 found: (1) Right leg: severe peripheral arterial disease with occluded right superficial femoral artery and patent gortex fem-pop graft. Borderline ABI; and (2) Left leg: Severe peripheral arterial disease with probable left iliac artery disease and high-grade distal superficial femoral artery stenosis. All waveforms are monophasic and abnormal ABI. [Plaintiff's Morrissey 095]. On September 20, 2010, Dr. Leeah, noted plaintiff was suffering neuropathic symptoms which were most likely due to chronic venous insufficiency. [Plaintiff's Morrissey 300]. In March of 2012, plaintiff was sent to Northwest Texas Hospital by ambulance for two EKGs [Plaintiff's Morrissey 543].

assessment.  Offenders found not to require emergent or urgent
care may be advised to continue with the routine sick call process[7].

If defendant KING's statement were unchallenged, he would be entitled to qualified immunity

and he would prevail at this, the summary judgment stage.  His statement, however, is disputed

by plaintiff who alleges that, contrary to defendant's affidavit, he was in extreme distress.

Plaintiff also disputes defendant's claim that it was Nurse O'Keefe's decision that plaintiff not be

sent to the infirmary.  Plaintiff alleges he overheard defendant KING tell the nurse that plaintiff

was "faking," and therefore it was defendant KING who made the decision plaintiff was "faking"

and on that basis refused to let him go to the infirmary.

As to defendant KING's statement that he believed Nurse O'Keefe's instruction

conformed to the TDCJ Managed Health Care Policy, it is noted first, that a dispute exists

whether Nurse O'Keefe independently made the decision not to see plaintiff on September 22,

2012 or whether that decision was made by defendant KING or by Nurse O'Keefe but based

upon information from defendant KING that plaintiff was "faking."  Absent from the evidence

before the Court is any details of the content of the conversation between defendant KING and

Nurse O'Keefe, from either individual.

Further, while plaintiff's ankle/foot condition was not specifically listed in TDCJ

Correctional Managed Health Care Policy E-37.1, quoted earlier, *supra*, it was arguably a

"possible emergent or urgent" condition.

Accepting plaintiff's statement that his foot and ankle were <u>extremely</u> swollen, that he

was in severe pain, and that it was defendant KING who made the diagnosis that plaintiff was

---

[7]See also Exhibit D5 to defendant's October 23, 2014 motion for summary judgment.

"faking," a factual dispute exists as to whether defendant KING knew of and disregarded a substantial risk of serious harm to inmate health or safety. *Farmer v. Brennan*, 511 U.S. 825, 114 S.Ct. 1970, 1981, 128 L.Ed.2d 811 (1994).

Defendant KING, however, might still be entitled to qualified immunity or to summary judgment if the denial of medical care on September 22nd or 23rd did not exacerbate plaintiff's condition. In that regard, defendant KING contends that even after three or four days of alleged delay, during which plaintiff alleges his condition worsened, plaintiff's medical record shows his condition was not as serious as he claims it was on the first day he approached defendant KING [8].

The medical record shows that, on September 25, 2012, a sick call request was received from plaintiff complaining that his right foot and ankle were swollen to about twice their size and that it was very painful and hard to walk. He said "[t]he last time this happened it was Gout and I think it has returned with a passion." He asked to be laid in and examined [Plaintiff's Morrissey 010].

Plaintiff was examined by Nurse Luna that same day, but not as a result of his sick call request. He was brought into the infirmary after he nearly fell coming out of the Chow Hall and while being helped by two other inmates. A guard arranged for plaintiff to be escorted to the infirmary. Therefore, it appears at least one guard determined plaintiff's condition was serious enough to merit a visit to the infirmary on Tuesday, September 25th.

---

[8]In an attempt to prove plaintiff's condition did not require urgent care or evaluation outside the routine sick call process, defendant offers Exhibit D7, an article or information sheet on cellulitis obtained from an internet site titled Everyday Health. This article advises one should make an appointment with a physician to get treatment and avoid complications if he "develop[s] a tender, red, warm, enlarging area on [his] skin." The article also advises that, "[i]f you also have fever and chills, or if the area involves the face, you should go to the emergency room." Although plaintiff does not challenge the evidentiary sufficiency of this online article and, instead, references it himself, the Court cannot accept this uncorroborated internet information as competent summary judgment evidence. Fed.R.Evid. 901; see, *e.g.*, *Taylor .v Kerr-McGee Corp.*, Civ. Action No. 00-2102, 2006 WL 39260, at *3 (W.D.La. Jan. 5, 2006). Further, a hearsay challenge would also appear to have some merit. Fed.R.Evid. 801, 802.

Nurse Luna noted plaintiff was ambulatory; his chief complaint was hot swollen red left foot and ankle up to the mid shin area; and she was unable to palpate pulses due to the pain and edema.  She found the skin to be hot, dry, with redness and that drainage was "not applicable." [Plaintiff's Morrissey 891].  She checked the box referring plaintiff to the doctor for same day assessment. [Plaintiff's Morrissey 892].

Plaintiff was seen that same day by Dr. Patel who found plaintiff had a full range of motion with some pain.  He diagnosed a possible insect bite and mild cellulitis of the right ankle [Plaintiff's III].

Plaintiff repeatedly and vigorously insists he was diagnosed with severe cellulitis, but he has presented no evidence to support that position, and the medical records presented to the Court only show a diagnosis of "mild cellulitis."

Dr. Patel had Dr. Leeah[9] order plaintiff some Tylenol with codeine for five days for pain relief and Dr. Patel also placed plaintiff on Clindamycin and sulfamethoxazole for ten days. [Plaintiff's III].  The sick call exam from the same date notes plaintiff's right ankle had some "redness with pain".  The doctor noted the following:  the "right ankle, extensor surface - 1+ redness, no deformities, minimal swelling, tender, not draining."   [Plaintiff's IV].

On September 27, 2012, plaintiff was examined by Dr. Leeah, who noted plaintiff's problem was right lower extremity cellulitis.  On examination he found plaintiff's right foot and ankle had a 2+ edema[10] and bright red erythema; 1 cm oval area in midline overlying flexor crease that has some violacious change but no fluctuance or drainage.  He diagnosed cellulitis

---

[9]Dr. Patel noted he was having trouble placing his own order with the pharmacy.

[10]Plaintiff interprets this 2+ edema to mean that his foot was swollen to twice its normal size; however, he presents no evidence to support this interpretation.  Defendant, also, presents no evidence as to the significance of this assessment.

right lower extremity which was somewhat better on treatment.  He continued plaintiff's bactrim and increased the dosage of clindamycin, requested a daily wound check for seven days, and ordered a follow-up with a doctor in one week [Plaintiff's II].

On September 28, 2012 plaintiff was examined by Nurse O'Keefe for his cellulitis in his leg.  On exam, the nurse found plaintiff had redness and swelling to "right lower extremity with pain to the touch noted, no signs of weeping or drainage noted on assessment, offender continues to have full range of motion, rates pain at a 8-9 with movement, Erythema noted to area." [Plaintiff's Morrissey 890].

On September 29, 2012, plaintiff was again examined by a nurse who noted "redness and swelling in right leg due to cellulitis, noted to have open wound in the crease of right ankle measuring 2x2 cm.  Noted small amount of serous drainage from open area."  He applied a dressing [Plaintiff's Morrissey 888].  Plaintiff was seen again on September 30, 2012, at which time his dressing was changed.   [Plaintiff's Morrissey 566].

At the time he was first examined by medical personnel on Tuesday, and after having been refused an infirmary pass on Saturday and Sunday, plaintiff's medical records show plaintiff was complaining of significant pain but was ambulatory,  had no fever, had some redness on his ankle, no deformities, minimal swelling, had some tenderness, was not draining, and had full range of motion.   [Plaintiff's Morrissey 891-892, Plaintiff's III-IV].  Plaintiff, of course, has pled his condition worsened as a result of the delay occasioned by KING's denial.

A question is presented whether the medical records show that plaintiff's condition was either (1) not emergent or (2) was not adversely affected by the two or three day delay. Defendant argues the medical records show plaintiff's condition was not urgent and was not

affected by the delay from Saturday to Tuesday.  To make that determination, however,

defendant is asking the Court to interpret the medical records which have been produced.  The

Court can certainly read the medical records and make an appropriate decision based upon such a

reading.  If, however, critical findings are not included in these records, the Court will not

interpret those records or make medical findings based on them.  In considering the issue it is

noted that plaintiff was seen by Nurse O'Keefe and two medical doctors, Dr. Patel and

Dr. Leeah.

Defendant has not, however, produced any affidavit or medical opinion from either one of

the examining physicians or from another doctor who had reviewed plaintiff's records, regarding

plaintiff's condition and whether it was an emergent condition.  Nor has defendant furnished any

medical opinion affidavit from the treating physicians that any delay did not result in substantial

harm to plaintiff, or that plaintiff's pain was not severe, or if his pain was severe, that the pain

could not have been alleviated.  Further, defendant has not submitted any evidence or affidavit

from Nurse O'Keefe confirming that it was he who made the decision not to examine plaintiff

and instructed defendant KING to so advise plaintiff.  In that regard, the Court also notes

plaintiff's assertion that Nurse O'Keefe stated to plaintiff that his (plaintiff's) condition was

worse than O'Keefe knew and that he (O'Keefe) should not have accepted KING's assessment

that plaintiff was faking.

Based on the summary judgment evidence before the Court, defendant has not shown a

material factual dispute does not exist as to the question of whether defendant's acts or

omissions, when considered under the standard not to be deliberately indifferent, were

objectively unreasonable as a matter of law.  *Hare v. City of Corinth*, 135 F.3d 320, 328 (5th Cir.

1998).

## CONCLUSION

Based upon the evidence submitted, and drawing all reasonable inferences in favor of plaintiff, there is a material issue of disputed fact which precludes entry of summary judgment for the defendant on the merits and on the issue of qualified immunity.  Federal Rule of Civil Procedure 56(a).  Defendant is, however, entitled to Eleventh Amendment immunity as to any claim against him in his official capacity and plaintiff's claim for declaratory judgment fails to state a claim on which relief can be granted.

It is the RECOMMENDATION of the Magistrate Judge to the United States District Judge that defendant's Motion for Summary Judgment be DENIED; that plaintiff's claim for declaratory judgment be DISMISSED WITH PREJUDICE FOR FAILURE TO STATE A CLAIM ON WHICH RELIEF CAN BE GRANTED; and that plaintiff's claim against defendant KING in his official capacity be DISMISSED WITHOUT PREJUDICE FOR WANT OF JURISDICTION, FED.R.CIV.PRO. 12(b)(1).

## INSTRUCTIONS FOR SERVICE

The United States District Clerk is directed to send a copy of this Report and Recommendation to each party by the most efficient means available.

**IT IS SO RECOMMENDED.**

ENTERED this 9th day of September, 2014.


_____
CLINTON E. AVERITTE
UNITED STATES MAGISTRATE JUDGE

### * <u>NOTICE OF RIGHT TO OBJECT</u> *

Any party may object to these proposed findings, conclusions and recommendation.  In the event parties wish to object, they are hereby NOTIFIED that the deadline for filing objections is fourteen (14) days from the date of filing as indicated by the "entered" date directly above the signature line.  Service is complete upon mailing, Fed. R. Civ. P. 5(b)(2)(C), or transmission by electronic means, Fed. R. Civ. P. 5(b)(2)(E).  **Any objections must be filed on or before the fourteenth (14th) day after this recommendation is filed** as indicated by the "entered" date.  *See* 28 U.S.C. § 636(b); Fed. R. Civ. P. 72(b)(2); *see also* Fed. R. Civ. P. 6(d).

Any such objections shall be made in a written pleading entitled "Objections to the Report and Recommendation."  Objecting parties shall file the written objections with the United States District Clerk and serve a copy of such objections on all other parties.  A party's failure to timely file written objections to the proposed findings, conclusions, and recommendation contained in this report shall bar an aggrieved party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings, legal conclusions, and recommendation set forth by the Magistrate Judge in this report and accepted by the district court.  *See Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc), *superseded by statute on other grounds*, 28 U.S.C. § 636(b)(1), *as recognized in ACS Recovery Servs., Inc. v. Griffin*, 676 F.3d 512, 521 n.5 (5th Cir. 2012); *Rodriguez v. Bowen,* 857 F.2d 275, 276-77 (5th Cir. 1988).